Mark David Hunter, Esquire
Jenny Johnson-Sardella, Esquire
HUNTER TAUBMAN FISCHER & LI LLC
2 Alhambra Plaza, Suite 650
Coral Gables, Florida 33134
Tel:   (305) 629-1180
Fax:  (305) 629-8099
E-mail:  mhunter@htflawyers.com
         jsardella@htflawyers.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAILINELI LTD., a foreign corporation, RAQUETTE VIEW LIMITED, a foreign corporation, LIQUID, LP, a foreign limited partnership, BENJAMIN BEJA LEZAMA, and MARIANA PINTO ESCANDON, <br><br> Plaintiffs, <br><br> v. <br><br> PRODIGY NETWORK, LLC, a Delaware limited liability company, 1400 N ORLEANS NEWCO, INC., PRODIGY SHOREWOOD DOMESTIC FEEDER REP FUND, LLC and RODRIGO NIÑO, an individual, <br><br> Defendants. | Civil Action No.: 20-cv-02906 <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Jailineli Ltd. ("Jailineli"), Raquette View Limited ("Raquette View"), Liquid, LP ("Liquid"), Benjamin Beja Lezama ("Mr. Beja") and Mariana Pinto Escandon ("Ms. Pinto") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file this Complaint against Defendants Prodigy Network, LLC ("Prodigy"), 1400 N Orleans NewCo, Inc. ("NewCo"), Prodigy Shorewood Domestic Feeder REP Fund, LLC ("Domestic Feeder"), and Rodrigo Niño ("Niño") (collectively, "Defendants").  In furtherance of the same, Plaintiffs allege as follows:

## NATURE OF ACTION

1.     Plaintiffs bring this action to recover damages arising out of Defendants' fraudulent misrepresentations and breaches in connection with certain Subscription Agreements (as defined below) with Defendants.

## PARTIES

2.     Jailineli is a foreign corporation organized and existing under the laws of the British Virgin Islands, with its principal place of business in the British Virgin Islands.

3.     Raquette View is a foreign corporation organized and existing under the laws of the Commonwealth of The Bahamas, with its principal place of business in the Commonwealth of The Bahamas.

4.     Liquid is a Pennsylvania limited partnership, with its principal place of business in Huntingdon Valley, Pennsylvania.  Upon information and belief, none of Liquid's partners are citizens of New York.

5.     Mr. Beja is domiciled in Mexico City, Mexico.

6.     Ms. Pinto is domiciled in Mexico City, Mexico.

7.      Defendant Prodigy is a Delaware limited liability company with its principal place of business in New York, New York.   Upon information and belief, none of Defendant Prodigy's members are citizens of Mexico.

8.      Defendant NewCo is a Delaware Corporation with its principal place of business in New York, New York.

9.      Defendant Domestic Feeder is a Delaware Corporation with its principal place of business in New York, New York.

10.     Defendant Niño is domiciled in New York, New York and is Defendant Prodigy's manager.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over the parties and over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because the action is between citizens of different states and the matter in controversy exceeds $75,000.

12.     This Court has personal jurisdiction and venue in this Court is proper pursuant to Section XI of the applicable Subscription Agreements, which provide, in relevant part:

> This Subscription Agreement shall be governed by the laws of the State of New York.  Each party irrevocably agrees to submit to the exclusive jurisdiction of the state and federal courts situated in New York City, New York over any claim arising under or in connection with this Subscription Agreement.

13.     Venue is also proper pursuant to 28 U.S.C. § 1391 because Defendants maintain their principal place of business, and a substantial part of the events giving rise to the claim occurred, in the Southern District of New York.

## FACTUAL ALLEGATIONS

14.     Defendant Prodigy is engaged in providing real estate investment opportunities to global clients, and operates a number of its real estate investments through various subsidiaries

and affiliates.

15.     Beginning in or about September 2018, Defendant Prodigy's sales agents provided Plaintiffs with an opportunity to invest in an offering led by Defendant Prodigy for NewCo Class B Common Stock and secured promissory notes from NewCo in connection with a property to be located at 1400 N Orleans Street, Chicago, Illinois 60610 (the "Project").

16.     Investment interests in NewCo were sold pursuant to the Amended and Restated Confidential Private Offering Memorandum of Prodigy Shorewood Master REP Fund, LLC, Prodigy Shorewood Domestic Feeder REP Fund, LLC, NewCo, and Prodigy Shorewood New York REP Fund, LP, (collectively, the "Fund") dated, July 15, 2016, and a Supplement to Confidential Private Offering Memorandum dated, September 25, 2018 (collectively, the "Offering Memorandum").

17.     According to the Offering Memorandum, Defendant NewCo was formed by Defendant Prodigy, NewCo's investment manager, as a vehicle to allow foreign investors such as Plaintiffs to invest in the Project.  Investors in NewCo would make an equity investment and a loan to NewCo, and NewCo would then contribute the proceeds of the equity investment and loan to the capital of the 1400 N Orleans Master Series of the Prodigy Shorewood Master REP Fund, LLC, in exchange for interests in such master series.  Specifically, Defendant Prodigy advised Plaintiffs that the proceeds of their equity investments and loans would be used to acquire the land associated with the Project.

18.     To induce Plaintiffs into investing in the Project, Prodigy offered equity investors, including Plaintiffs, the opportunity to invest with a voluntary redemption option.  An equity investor could redeem its investment plus 14% interest after 12-months simply by providing Defendant Prodigy with a written redemption notice.

4

19.     The Offering Memorandum provided, in pertinent part, regarding Voluntary Redemptions:

> *Certain investors will be given the option to redeem their interests at the Redemption Price (as defined below) as indicated in their Subscription Agreement during the period beginning on the date that is 12 month after the date that their subscription has been accepted by Administrator or the Investment Manager (the "Voluntary Redemption Start Date") and ending on the date that is 12 months after the Voluntary Redemption Start Date (the "Voluntary Redemption Period"). Any such redemptions made during the Voluntary Redemption Period will be made at such time during the Voluntary Redemption Period as the Investment Manager (in its sole discretion) shall determine. Any such investor that wishes to exercise such option to redeem at the Redemption Price during the Voluntary Redemption Period must provide written notice thereof to the Investment Manager prior to the Voluntary Redemption Start Date.*

> *"Redemption Price" means, with respect to any Domestic Preferred Interest, Offshore Preferred Interest or NewCo Class B-1 Common Stock and NewCo Loan held by an Investor that is being redeemed, an amount equal to the difference of (a) the sum of (x) capital contributions made by such investor in connection with such Domestic Preferred Interest, Offshore Preferred Interest or NewCo Class B-1 Common Stock and NewCo Loan, as applicable, plus (y) an amount equal to an 14% pre-tax annual compounded return, or such other amount as indicated in the Subscriber's Subscription Agreement to the extent the amount is different (from the date of such capital contributions), on such capital contributions less (b) all amounts previously paid or otherwise distributed to such investor by the 1400 N Orleans Domesitc Feeder Series, the 1400 N Orleans Offshore Feeder Series or NewCo in connection with such Domestic Preferred Interest, Offshore Preferred Interest or NewCo Class B-1 Common Stock and NewCo Loan.*

20.     In order to make an investment, investors, including Plaintiffs, were required to execute a Subscription Agreement, which incorporated by reference, the terms of the Offering Memorandum.

21.     On or about September 25, 2018, Jailineli executed the NewCo Subscription

Documents to purchase NewCo Class B Common Stock in the amount of $125,000, and to make a loan to NewCo in the amount of $375,000.   Jailineli invested in that manner, and Jailineli's subscription included a voluntary redemption option.

22.     On or about September 25, 2018, Raquette executed the NewCo Subscription Documents to purchase NewCo Class B Common Stock in the amount of $125,000, and to make a loan to NewCo in the amount of $375,000.  Raquette invested in that manner, and Raquette's subscription included a voluntary redemption option.

23.     On or about October 10, 2018, Plaintiffs Mr. Beja and Ms. Pinto executed the NewCo Subscription Documents to jointly purchase NewCo Class B-1 Common Stock in the amount of $250,000, and to make a loan to NewCo in the amount of $750,000.   Mr. Beja and Ms. Pinto invested in that manner, and Mr. Beja and Ms. Pinto's subscription included a voluntary redemption option.

24.     On or about October 29, 2018, Liquid executed the Domestic Feeder Subscription Documents[1] to purchase membership interests in Domestic Feeder in the amount of $1,000,000. Liquid invested in that manner, and Liquid's subscription included a voluntary redemption option.[2]

25.     After making their respective investments, Plaintiffs learned that Defendant Prodigy was experiencing difficulties in meeting its financial obligations relating to the Project as well as other projects under its control, due to alleged mismanagement and other questionable business practices.  In addition, Plaintiffs learned that due to liquidity constraints, Defendant Prodigy had to suspend its payment of notes due in June 2019.

---

[1] Plaintiffs' executed subscription documents are collectively referred to as the Subscription Agreements.
[2] Other than the respective investment amounts and investment vehicles, terms of the Subscription Agreements, including the Offering Memorandum, executed by each of the Plaintiffs are identical.

26.     In or about early-2019, Defendant Prodigy was experiencing cash difficulties because of Defendant Niño's poor management and irresponsible financial practices.   In addition, Defendant Prodigy and Defendant Niño are the alter egos of one another because corporate formalities were not observed, and because Defendant Prodigy's profits were utilized to fund Defendant Niño's personal expenses and distributions.

27.     According to a statement issued by Defendant Prodigy in or about June 2019, the New York projects were operating below the original performance projections and, as a result, Defendant Prodigy had to contribute $2 million towards working capital, manager loans, and withholding collection of asset management fees, to cover current and future debt obligations relating to the projects, including the Project.[3]

28.     Beginning in or about September 2019, many investors, including Plaintiffs were no longer receiving updates regarding the financial health of the Fund from Defendants.   As a result of the declining financial health of the Project, and Defendant Prodigy and Defendant Niño's misappropriations, Plaintiffs began submitting their requests to redeem their investments.

29.     On or about October 10, 2019, Jailineli submitted a written demand to redeem its full equity investment and loan in NewCo to Defendant Prodigy and to Prodigy Shorewood Investment Management, LLC. Jailineli's redemption demand entitled it to unconditionally receive the return of its full capital contribution of $500,000 plus a 14% pre-tax annual compounded return.   However, to date, Defendant Prodigy has failed to make any payment to Jailineli.

30.     On or about October 7, 2019, Raquette submitted a written demand to redeem its

---

[3] Plaintiffs have been further informed that many of Defendant Prodigy's business units in 2018 and 2019 significantly underperformed against their budgets due to potential mismanagement.

full equity investment and loan in NewCo to Defendant Prodigy.  Raquette's redemption demand entitled it to unconditionally receive the return of its full capital contribution of $500,000 plus a 14% pre-tax annual compounded return.  However, to date, Defendant Prodigy has failed to make any payment to Raquette.

31.     On or about July 19, 2019, Mr. Beja and Ms. Pinto timely submitted a written demand to redeem their full equity and loan in NewCo to Defendant Prodigy.  Mr. Beja and Ms. Pinto's redemption demand entitled them to unconditionally receive the return of their full capital contribution of $1,000,000 plus a 14% pre-tax annual compounded return.  However, to date, Defendant Prodigy has failed to make any payment to Mr. Beja and Ms. Pinto.

32.     On or about July 19, 2019, Liquid timely submitted a written demand to redeem its full equity investment in Domestic Feeder to Defendant Prodigy and NESF Fund Services Corp. ("NESF"), the Fund's administrator.   Liquid's redemption demand entitled it to unconditionally receive the return of its full capital contribution of $1,000,000 plus a 14% pre-tax annual compounded return.  However, to date, Defendant Prodigy has failed to make any payment to Liquid.

33.     In a meeting with investors on August 20, 2019, Defendant Niño informed investors, including Plaintiffs, that the Fund did not have sufficient capital to meet financial obligations relating to the Project, including payment of the pending investor redemption requests.

34.     According to NESF, in or around December 2019, the Fund's cash balance had quickly decreased leaving a balance well below the funds raised to complete the Project as set forth in the Offering Memorandum.

35.     Upon information and belief, Prodigy's insolvency is imminent and Defendants have utilized Plaintiffs' investments for purposes other than those relating to the Project in

violation of the terms of the Offering Memorandum and Subscription Agreements.  As such, it is impossible for Defendants to fulfill Plaintiffs' redemption requests.

## COUNT I – BREACH OF CONTRACT
### (Plaintiffs Against Defendants)

36.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 35 as if fully set forth herein.

37.     Plaintiffs and Defendants entered into valid agreements, as set forth above. Plaintiffs' Subscription Agreements constitute valid and enforceable contracts between Plaintiffs and Defendants.

38.     Plaintiffs performed all conditions, covenants, and promises required under the Subscription Agreements.  All conditions precedent to Defendants' obligations under the Subscription Agreements have been satisfied.

39.     Defendants have indicated to Plaintiffs through their failure to utilize Plaintiffs' investment funds in accordance with the Subscription Agreements and Offering Memorandum and their impending insolvency that its performance pursuant to the Subscription Agreements and Offering Memorandum is impossible.

40.     Accordingly, Defendants have impliedly repudiated its contractual duties prior to the time designated for performance and before all of the consideration has been fulfilled, entitling Plaintiffs to recover damages for total breach under New York law.

41.     As a result of Defendants' breach, Plaintiffs have suffered, and will continue to suffer, substantial damages of at least $3 million plus interest.

## COUNT II – CONVERSION
(Plaintiffs Against Defendants)

42.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

43.     At all relevant times, Plaintiffs continue to have rights in and are entitled to the return of their investment funds.

44.     In or about September and October 2018, Plaintiffs were instructed to transfer their investments under the Subscription Agreements to Prodigy Shorewood Master REP Fund, LLC.  Upon NESF's acceptance of the Subscription Agreements, Plaintiffs' funds were to be contributed to the 1400 N Orleans Domestic Feeder Series.

45.     As stated above, Defendant Niño and Defendant Prodigy are alter egos of each other because Defendant Niño failed to observe corporate formalities when he commingled funds and used investment funds in Defendant Prodigy and its affiliates' accounts, including Plaintiffs' funds, to fund Defendant Niño's personal expenses.

46.     Defendants, by their wrongful acts, conspired to illegally take, and did illegally take funds which were rightfully owned by Plaintiffs and converted such funds for their own use and benefit.

47.     Defendants' wrongful acts included, but were not limited to, using Plaintiffs' funds to pay Defendant Niño's personal expenses.

48.     By reason of the foregoing, Plaintiffs have sustained damages in an amount to be determined at trial.

## <u>COUNT III – COMMON LAW FRAUD</u>
(Plaintiffs Against Defendants)

49.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

50.    Defendants, through Defendant Niño, knowingly misrepresented to Plaintiffs that they were making their investments pursuant to the respective Subscription Agreements while Defendants were misappropriating Plaintiffs' funds to pay Defendant Niño's personal expenses. Defendants knowingly misrepresented these facts in writing and orally during conference calls on or before January 30, 2019.

51.    These facts were material to Plaintiffs in connection with their decisions to invest.

52.    Defendants knew that these material misrepresentations were false at the time they communicated this information to Plaintiffs.

53.    Plaintiffs would not have invested if Plaintiffs had known of these material misstatements regarding the use of their funds.

54.    Plaintiffs reasonably relied on these material misstatements and omissions, based on, among other things, Defendants' explicit assurances that Plaintiffs' funds would be used to purchase membership interests in NewCo and Domestic Feeder and fund loans to NewCo.

55.    Plaintiffs could not have discovered the truth of Defendants' misstatements and omissions through the exercise of ordinary diligence because the information was either kept confidential or known only by Defendants.

56.    Plaintiffs have lost approximately $3 million of their respective investment funds.

57.    Because Defendants engaged in their fraudulent conduct willfully and maliciously, and with the intent to damage Plaintiffs, Plaintiffs are entitled to an award of damages, including punitive damages.

11

WHEREFORE, Plaintiffs seek judgment in their favor and against Defendants Prodigy Network, LLC, 1400 N Orleans NewCo, Inc., Prodigy Shorewood Domestic Feeder REP Fund, LLC, and Rodrigo Niño for damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury in this matter.

Dated:  April 8, 2020
        Coral Gables, Florida

                                 **HUNTER TAUBMAN FISCHER & LI LLC**

                                 */s/ Mark David Hunter*
                                 Mark David Hunter, Esquire
                                 New York Bar No. 4017331
                                 Jenny Johnson-Sardella, Esquire
                                 New York Bar No. 4225850
                                 2 Alhambra Plaza, Suite 650
                                 Coral Gables, Florida 33134
                                 Tel:        (305) 629-1180
                                 Fax:        (305) 629-8099
                                 E-mail:     mhunter@htflawyers.com
                                              jsardella@htflawyers.com